932 F.2d 1020
 33 ERC 1035, 59 USLW 2757, 24 Collier
Bankr.Cas.2d 1737,
21 Bankr.Ct.Dec. 1073, Bankr. L. Rep. P 73,931,
21 Envtl. L. Rep. 21,051
 The CITY OF NEW YORK, Plaintiff-Appellee,
v.
EXXON CORPORATION, Exxon Research and Engineering Company,
Inc., Ingersoll-Rand Company, Alcan Aluminum Corporation,
Ford Motor Company, Koppers Company, Inc., BASF Wyandotte
Corporation, Borg-Warner Corporation, Chrysler Corporation,
United Technologies Corporation, Carrier Corporation,
National Can Corporation, Public Service Electric & Gas
Corporation, Dana Corporation, Defendants.
Refinemet International, Inc. f/k/a Ag-Met, Inc., Defendant-Appellant.
 No. 179, Docket 90-7360.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 9, 1990.
Decided May 2, 1991.
 
 Joseph A. DiBenedetto, New York City (Winston & Strawn, Jeanne Murphy, of counsel), for defendant-appellant.
 Christopher A. Amato, Asst. Corp. Counsel, New York City (Victor A. Kovner, Corp. Counsel of N.Y., Stephen J. McGrath, Peter H. Lehner, of counsel), for plaintiff-appellee.
 Before MAHONEY and WALKER, Circuit Judges, and MARTIN, District Judge.*
 WALKER, Circuit Judge:
 
 
 1
 In this appeal from a grant of partial summary judgment in favor of the City of New York ("the City") in its recovery and damage action under CERCLA against defendant Refinemet International, Inc. for certain environmental violations, we must decide two issues: (1) whether the action is barred by 11 U.S.C. Sec. 362(a), which automatically stays litigation of claims against a debtor which were or could have been commenced before the filing of a debtor's bankruptcy action, and (2) whether the court properly enjoined further litigation of the City's claim in Refinemet's ongoing Chapter 11 bankruptcy proceeding in the Central District of California. Because we determine that the City's suit falls within the so-called "police and regulatory exemption" from the automatic stay, we conclude that the automatic stay provision is not a bar to the city's suit. We also conclude that under the "first filed" rule, and for reasons of judicial economy, Judge Conboy acted within his discretion in enjoining further litigation of the City's claims in California bankruptcy court pending resolution of the New York proceedings.
 
 BACKGROUND
 
 2
 The City of New York commenced this action against Refinemet and fourteen other corporate defendants in March of 1985 pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9601 et seq. to recover the costs of removing from several of its landfills certain hazardous substances contained in industrial wastes generated by these defendants. The wastes were illegally dumped in the landfills by wastehauling companies hired by defendants to remove these wastes. The operator of these companies, one Russell Mahler, bribed a city sanitation officer to gain access to the landfills and dump the wastes. In addition to generating some of these industrial wastes, Refinemet wholly owned one of the wastehauling companies operated by Mahler, Newtown Refining Corporation, at a time when Newtown was illegally dumping waste in the City's landfills.
 
 
 3
 The City's complaint against Refinemet sought recovery under 42 U.S.C. Sec. 9607(a)(4)(A) and (B) of costs incurred and to be incurred in responding to the release of hazardous substances in the landfills, a declaratory judgment under Sec. 9607(a)(4)(A) and (B) that Refinemet was liable for future costs of investigations and remedial action at the sites, and damages for injury to natural resources under Sec. 9607(a)(4)(C).[1]
 
 
 4
 In June 1985 Refinemet moved to dismiss the complaint for lack of personal jurisdiction; in 1986 this motion was denied, as were other defendants' various motions to dismiss. See City of New York v. Exxon Corp. (Exxon I), 633 F.Supp. 609 (S.D.N.Y.1986). In October of 1987 Refinemet filed for reorganization under Chapter 11 of the Bankruptcy Code in district court for the Central District of California, which action was "referred" to the bankruptcy court under 28 U.S.C. Sec. 157(a). In June 1988, the City filed a timely proof of claim in the California bankruptcy proceeding, informing that court of the existence of its New York recovery action, and attaching a copy of the complaint. On November 23, 1988, Judge Conboy approved a consent judgment settling the city's suit against seven of the defendants, see City of New York v. Exxon Corp. (Exxon II) 697 F.Supp. 677 (S.D.N.Y.1988); in May 1989 two more consent judgments were approved against six additional defendants, leaving Refinemet and Alcan Aluminum Corporation as the only defendants.
 
 
 5
 In September 1989 the City moved for summary judgment in New York on Refinemet's liability. After successfully obtaining several adjournments of the motion before Judge Conboy, Refinemet moved in the California bankruptcy proceeding for a determination of its liability to the City under CERCLA. Refinemet followed that motion with a letter to the district court in the New York action that asked the court to "strike" the City's summary judgment motion. The City's response was to move under 28 U.S.C. Sec. 157(d) for withdrawal to the New York district court of those parts of Refinemet's California Chapter 11 proceeding which deal with the City's CERCLA claims. On March 30, 1990, Judge Conboy, finding the automatic stay in bankruptcy inapplicable to the City's action, granted the City's summary judgment motion as to Refinemet's liability, and enjoined the parties from litigating the remaining damage issues in the California bankruptcy proceeding. He denied the City's motion to withdraw the California's bankruptcy court's reference on the grounds that he lacked jurisdiction to do so. 112 B.R. 540.
 
 
 6
 Refinemet appeals from this order, claiming that the district court order erred in 1) holding Refinemet directly liable to the City as a "person" who arranges for the transportation and disposal of hazardous substances under CERCLA or, alternatively, indirectly liable for Newtown's illegal dumping actions by piercing the corporate veil between it and Refinemet; 2) finding the bankruptcy code's automatic stay provision inapplicable to the City's New York recovery action; and 3) enjoining remaining litigation of the City's damages under CERCLA in the California bankruptcy proceedings.
 
 
 7
 Judge Conboy's ruling on liability is not a final order. The ruling left damages and Refinemet's affirmative defenses still to be considered. Accordingly his grant of summary judgment was only partial, and is not appealable at this time. See Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). ("[P]artial summary judgment[s] limited to the issue of ... liability ... are by their terms interlocutory, ... and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. Sec. 1291.") Nor do we consider this an appropriate case for the exercise of pendent appellate jurisdiction. We have repeatedly indicated that such jurisdiction should rarely be invoked, see Natale v. Town of Ridgefield, 927 F.2d 101, 104 (2d Cir.1991), and as our ensuing discussion demonstrates, Refinemet is incorrect in its assertion that the merits of the CERCLA case are "inextricably intertwined" with the other issues raised by this appeal.
 
 
 8
 We do have jurisdiction, however, under 28 U.S.C. Sec. 1291(a)(1) to review the applicability of the automatic stay provision to the CERCLA action, and the propriety of Judge Conboy's injunction against further CERCLA litigation in the California bankruptcy proceeding.
 
 DISCUSSION
 A. The Automatic Stay
 
 9
 11 U.S.C. Sec. 362(a) stays the commencement or continuation of all proceedings against a debtor that were or could have been commenced before the debtor filed for bankruptcy.[2] Certain actions are exempt from this stay, however, including, under Sec. 362(b)(4), "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." However, collection of a money judgment obtained in such a regulatory proceeding, would be barred by the stay. See 11 U.S.C. Sec. 362(b)(5).
 
 
 10
 The question of whether governmental suits for recovery of costs incurred in responding to completed violations of environmental statutes fall under the police power exemption to the automatic stay is new to this circuit. In addressing it, we find the legislative history to the automatic stay provision to clearly support the view that Congress meant to except damage actions for completed violations of environmental laws from the action of the stay.
 
 
 11
 Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
 
 
 12
 S.Rep. No. 989, 95th Cong.2d Sess. at 52 (1978); H.R.Rep. No. 595, 95th Cong.2d Sess. at 343 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5838, 6299. (emphasis added).
 
 
 13
 The inclusion of damage actions for reimbursement together with injunctive relief in this section furthers the purpose of the automatic stay's regulatory exception. The availability of a reimbursement action encourages a quick response to environment crises by a government, secure in the knowledge that reimbursement will follow. Such a quick response is a direct exercise of a government's police power to protect the health and safety of its citizens. Actions to collect damages after violations have occurred also are consistent with the section's legislative objective of "enforc[ing] ... police or regulatory powers." They provide an effective deterrent to violators, who will be forced to pay for the government's costs in responding to their violations. The need to continue such deterrent actions, despite the pendency of a bankruptcy action, furthers the purpose of the regulatory exemption to the automatic stay squarely: to avoid frustrating "necessary governmental functions by seeking refuge in bankruptcy court." United States v. Seitles, 106 B.R. 36, 38-40 (S.D.N.Y.1989), vacated on other grounds, 742 F.Supp. 1275 (S.D.N.Y.1990). We therefore hold that governmental actions under CERCLA to recover costs expended in response to completed environmental violations are not stayed by the violator's filing for bankruptcy. See United States v. Nicolet, Inc., 857 F.2d 202 (3d Cir.1988).
 
 
 14
 Refinemet points out, however, that the City's action is one for recovery of hazardous wastes found in the City's own landfills. As such, it should not be viewed as a governmental unit's enforcement action in furtherance of its police or regulatory powers, but rather as a damage action by a private party, because the City is acting in this instance as a landowner, not a policeman. Refinemet contends that actions for clean up costs authorized under 42 U.S.C. Sec. 9607(a)(4) are subdivided between "public" actions under subsection (A) and "private" actions under subsection (B); and that "public" plaintiffs under subsection (A) are limited to "the United States government or a State or an Indian tribe" whereas a subsection (B) plaintiff can be any "person," defined in Sec. 9601(21) to include "municipalit[ies]." Subsection (A) actions allow for recovery of "all costs of removal or remedial action" that are "not inconsistent with the national contingency plan" whereas subsection (B) limits recovery to "any other necessary costs of response" that are "consistent with the national contingency plan." The National Contingency Plan, pursuant to 33 U.S.C. Sec. 1321(c), describes approved methods of responding to hazardous substance releases.
 
 
 15
 Refinemet argues that the City's action must be viewed a subsection (B) action by a "person" to recover damages for "necessary costs of response" both because of the nature of the suit--the City acting in its own interest in cleaning up its own property--and because subsection (A) "public" actions are available only to the Federal Government, States and Indian Tribes, not municipalities. As such, Refinemet says, the City's action should not be viewed as a "public" action to enforce its police and regulatory power, which would exempt it from the workings of the automatic stay in bankruptcy under 11 U.S.C. Sec. 362(b)(4).
 
 
 16
 Although the district court determined that the City had standing under subsection (A) as well as subsection (B), we need not decide the question because we disagree with Refinemet's assertion that the availability of the automatic stay exemption turns on its resolution. What matters in determining whether an CERCLA reimbursement action falls under the exception to the automatic stay is not under what subsection of Sec. 9607(a)(4) it is brought, but what entity is bringing it, and for what purpose. 11 U.S.C. Sec. 362(b)(4) exempts "an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." It requires that such suits be brought by governmental units, not private persons. It does not mandate in what form, under what statute, or in what capacity the governmental unit must sue. All that is required is that the suit be one that "enforce[s]" that unit's "police or regulatory powers." The City's suit, for the reasons we stated earlier, does just that. We see no meaningful distinction for automatic stay exemption purposes between a suit to recover clean-up costs at a city landfill and one to clean up a city park or street which may superficially be seen as more "public." Each suit encourages a rapid governmental response to environmental damage. The City in each case acts on behalf of the taxpayer and in doing so draws upon public funds. Each suit, if permitted to progress to judgment notwithstanding bankruptcy, serves to deter the would-be violator. Therefore, in our view, each suit "enforces" the City's "police or regulatory power" and thus falls within the exemption to the automatic stay.
 
 B. The Injunction
 
 17
 Having determined that the automatic stay provision is not a bar to the City's action against Refinemet on liability and damage issues, we turn to Judge Conboy's injunction against litigation by the parties in the California bankruptcy proceeding. In our view, Judge Conboy acted well within his discretion in enjoining litigation of damages and related issues in the California proceeding both under the "first filed" rule, and as a matter of judicial economy.
 
 
 18
 The "first filed" rule states that "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action," Meeropol v. Nizer, 505 F.2d 232, 235 (2d Cir.1974), unless "there are special circumstances which justify giving priority to the second" action. William Gluckin & Co. v. International Playtex Corp., 407 F.2d 177, 178 (2d Cir.1969) (citations omitted). The City filed its New York action against Refinemet and other defendants in 1985; Refinemet filed its California Chapter 11 petition in 1987. The City's suit was thus first in time.
 
 
 19
 Refinemet argues, however, that the "first filed" rule must give way to "special circumstances" in this case because it faces other environmental liability claims in bankruptcy court flowing from Mahler's actions; the California court will have to wrestle with similar issues in these actions; and therefore it is more efficient, and likely to reduce the possibility of inconsistent judgments, to resolve all of the actions in the California forum. We disagree.
 
 
 20
 The City's action against Refinemet in New York and the City's claim in Refinemet's California reorganization proceeding involve identical parties and present the same issue--whether and to what extent Refinemet is liable to the City for its costs in responding to the hazardous substances dumped by Newtown and others in the City's landfills. They are, in fact, the same case. Judicial economy argues that two courts should not expend their energies on this matter. In determining which court should, the fact that the California bankruptcy court will be handling similar matters weighs far less on the efficiency scale than the fact that a New York court has already spent considerable time and effort dealing with the exact same case, an assessment already captured by the "first filed" rule.
 
 
 21
 We note further that the litigation of the City's CERCLA claim in the California bankruptcy proceeding could well result in a withdrawal of the bankruptcy reference if the City's claim should require substantial interpretation of CERCLA. 28 U.S.C. Sec. 157(d) requires that a district court, on timely motion of a party, withdraw all or part of a case from a bankruptcy court if:
 
 
 22
 the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.
 
 
 23
 This mandatory withdrawal provision has been interpreted to require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes. See In re Johns-Manville Corp. 63 B.R. 600, 602 (S.D.N.Y.1986); Hatzel & Buehler Inc. v. Orange & Rockland Utilities, 107 B.R. 34 (D.Del.1989) (listing cases). Even if the bankruptcy court considered Judge Conboy's liability finding to be res judicata, his determination as to the amount of damages and the availability of affirmative defenses has yet to be made. These questions are likely to require further interpretation of CERCLA; for example, whether the costs the City seeks to recover are "response costs" within the meaning of CERCLA; whether costs incurred in compliance with other statutes such as the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., and the Clean Water Act, 33 U.S.C. Sec. 1321, are recoverable under CERCLA; and whether 42 U.S.C. Sec. 9607(a)(4) permits recovery for costs not yet incurred. Resolution of these and other questions in California would likely require a withdrawal from the bankruptcy court to the district court under 28 U.S.C. Sec. 157(d). This would, of course, necessitate the involvement in this action of yet another forum--hardly a development that furthers judicial economy.
 
 
 24
 Withdrawal would not depend, as Refinemet seems to think, on whether the statutory interpretation fell within the bankruptcy court's "core" or "non-core" jurisdiction. See 28 U.S.C. Sec. 157(b)(1), (2) and (c)(1). Determination of the nature and extent of Refinemet's liability to the City is indeed a "core" matter, since it relates to "allowance or disallowance of claims against the estate or exemptions from property of the estate ... for the purposes of confirming a plan under chapter 11" 28 U.S.C. Sec. 157(b)(2)(B). Yet matters within this "core" jurisdiction, upon timely motion, must be withdrawn under Sec. 157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce.
 
 
 25
 In sum, considerations of judicial economy weigh heavily in the calculus of an injunction against another proceeding and, in this case, given Judge Conboy's considerable expenditure of time and effort on this case, there is no sound reason why his work should be duplicated in the California proceeding. With the injunction in place, the City's action will be taken to judgment in New York and any judgment in the City's favor can then be presented in the bankruptcy court. These considerations, apart from the "first filed rule," merit our conclusion that Judge Conboy's injunction against further litigation of the city's claims against Refinemet in the California proceeding was both within his discretion and appropriate.
 
 
 26
 To conclude, we affirm those portions of the district court's order that held the City's action exempted from the automatic stay in bankruptcy and that enjoined the parties from litigating damages and Refinemet's affirmative defenses in the California bankruptcy proceeding.
 
 
 27
 Affirmed in part.
 
 
 
 *
 The Honorable John S. Martin, Jr., United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 9607(a)(4)(A), (B) and (C) read as follows:
 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release;
 Refinemet argued in the district court that the City's had standing to sue only under subsection (B). The district court found standing under subsection (A) as well, and reserved decision as to whether standing also existed under subsection (C). Under Sec. 9607(f) a suit under subsection (C) can only be brought by "trustees for natural resources" designated by the governor of a state or by the United States. Whether the City has been so designated has yet to be resolved by the district court and thus we decline to consider the question.
 
 
 [2]
 11 U.S.C. Sec. 362(a)(1) reads as follows:
 Except as provided in subsection (b) of this section, a petition filed ... operates as a stay, applicable to all entities, of--
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.