In re KEENE CORPORATION, Debtor.

KEENE CORPORATION, Plaintiff,

v.

WILLIAMS BAILEY & WESNER, L.L.P.; Ness, Motley, Loadholt, Richardson & Poole; Brown, Terrill, Hogan, Ellis, McClamma & Yegelwel, P.A.; Law Offices of Peter G. Angelos; Rose, Klein & Marias; Richard F. Scruggs, P.A.; Wilentz, Goldman & Spitzer, P.C.; Wellborn, Houston, Adkinson, Mann, Sadler & Hill; Thornton Early & Naumes; Schroeter, Goldmark & Bender, P.S.; Robert E. Sweeney Co., L.P.A.; Kazan, McClain, Edises & Simon; Ashcraft & Gerel; Thomas W. Henderson; and Goldberg, Persky, Jennings & White, P.C., Defendants.

KEENE CORPORATION, Plaintiff,

v.

LEVY, PHILLIPS & KONIGSBERG; Sterl F. Shinaberry; Law Office of Danny Cupit; and Hostler Law Offices, Defendants.

KEENE CORPORATION, Plaintiff,

v.

WILLIAMS BAILEY & WESNER, L.L.P.; and Shein Johnson & Berezofsky, P.C., Defendants.

KEENE CORPORATION, Plaintiff,

v.

WILLIAMS BAILEY & WESNER, L.L.P.; Umphrey Swearington, Eddins & Carver; Greitzer & Locks; Reaud, Morgan & Quinn a/k/a Umphrey, Williams & Bailey; Baron & Budd, P.C.; Shein, Johnson & Berezofsky, P.C. a/k/a Joseph Shein, Shein, Paul, Reich & Myers a/k/a Shein & Brookman a/k/a Paul Reich & Myers; Levy, Phillips & Konigsberg; Brookman, Rosenberg; Ness, Motley, Loadholt, Richardson & Poole; Brown, Terrell, Hogan, Ellis, McClenna & Yegelwel, P.A.; Law Office of Peter J. Angelos; Rose, Klein & Marias; Law Office of Danny Cupit a/k/a Cupit & Wilentz, Goldman & Spitzer; Wellborn, Houston, Adkison, Mann, Sadler & Hill; Robert E. Sweeney Co., L.P.A.; Kazan, McClain, Edises & Simon; Weitz & Luxenberg; Robles & Gonzalez, P.A.; Blank, Rome, Comisky & McCauley; Sterl F. Shinaberry; Ashcraft & Gerel; Hostler Law Office; and Thomas W. Henderson and Goldberg, Persky, Jennings & White f/k/a/ Henderson & Goldberg, Defendants.

Nos. 94 Civ. 5776 (KTD), 94 Civ. 5777 (KTD), 94 Civ. 6038 (KTD) and 95 Civ. 164 (KTD).

United States District Court, S.D. New York.

May 10, 1995.

Berlack, Israels & Liberman (Carole L. Fern, Janice B. Grubin, Gerard R. Luckman, of counsel), New York City, for debtor-plaintiff.

Caplin & Drysdale (Elihu Inselbuch, C. Sanders McNew, Peter Van N. Lockwood, Graeme W. Bush, of counsel), Kramer, Levin, Naftalis, Nessen, Kamin & Frankel (Philip S. Kaufman, Michael J. Dell, of counsel), New York City, Conrad O'Brian Gellman & Rohn, P.C. (James J. Rohn, Karen M. Scheller, Albert H. Manwaring, of counsel), Philadelphia, PA, Sutherland, Asbill & Brennan (David C. Wrobel, of counsel), New York City, Umphrey, Swearington, Eddins & Carvins (Gary Thompson, of counsel), Beaumont, TX, Brauner Baron Rosenzweig & Klein, LLP (Alan Nisselson, of counsel), New York City, Hopkins & Sutter (Murray Drabkin, of counsel), Washington, DC, for bankruptcy movants-defendants.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

The Keene Corporation ("Debtor" or "Keene") filed an adversary proceeding against twenty-seven law firms ("Defendants"), alleging that Defendants forced Keene into bankruptcy. Defendants have moved for withdrawal of the reference of the proceeding from the bankruptcy court to this court pursuant to 28 U.S.C. § 157(d). Defendant Levy Phillips & Konigsberg ("LPK") also appeals from an interlocutory order denying its motion to dismiss a civil contempt proceeding. For the reasons discussed below, Defendants' withdrawal motion is denied, and LPK's appeal is dismissed.

### BACKGROUND

In 1968, Keene Corporation entered the asbestos market through its acquisition of

Baldwin–Ehret–Hill, Inc. ("BEH"). BEH did not mine asbestos and its total output of asbestos-containing products represented less than one percent of the total market of asbestos-containing products. (Compl. ¶ 60). Since 1975, Keene has been inundated by asbestos-related tort claims asserted against it on behalf of tens of thousands of individuals and entities. As a result of these legal actions, Keene filed a petition for Chapter 11 bankruptcy protection on December 3, 1993. The majority of Keene's creditors are approximately 108,600 plaintiffs asserting personal injury and wrongful death claims against Keene, many of whom are represented by the Defendant firms.

Keene alleges that its financial crisis and its Chapter 11 filing were directly caused by its enormous expenditures it incurred in defending itself in the claims brought by the twenty-seven Defendant law firms on behalf of asbestos tort claimants. (Compl. ¶ 18). Keene further alleges that these funds were expended primarily to settle non-meritorious claims. Specifically, Keene alleges that Defendants "actively solicited false or intentionally misleading medical support and/or false or intentionally misleading product identification information for those claims in a deliberate and successful attempt to take advantage of … Keene and its legitimate creditors and shareholders." (Compl. ¶ 6). Keene's sixty-five page verified complaint names twenty-seven Defendant firms, alleging, inter alia, violations of Antitrust Law, 15 U.S.C. § 1, *et seq.*, (1994), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1994). Defendants move this Court, pursuant to 28 U.S.C. § 157(d), for withdrawal of the reference to the bankruptcy court.

## I. The Motion To Withdraw the Reference

Under 28 U.S.C. § 157(d), the district court may, and in some circumstances must, withdraw the reference to the bankruptcy court. Section 157(d) provides that:

> [t]he district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall,* on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id.* (emphasis added).[1]

Defendants argue that withdrawal is mandatory due to the nature of the claims and the complexity of the statutes on which they are based. In the alternative, Defendants argue for the court to exercise its discretion and withdraw the reference. Plaintiff opposes these motions, arguing that withdrawal under the circumstances of this case is not mandated, and that the matter is properly left in the bankruptcy court at this juncture in the proceedings.

## A. Mandatory Withdrawal

Defendants assert that the reference must be withdrawn due to the complex issues presented which will require the bankruptcy court to interpret federal statutes which are outside the scope of its expertise. *See City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir.1991). Defendants argue that the bankruptcy court judge will be required to "engage in significant interpretation, as opposed to simple application," of the Antitrust and RICO statutes, and therefore, the matter must be disposed of in the district court. *Id.*

Keene asserts that withdrawal is not mandated, arguing that withdrawal is required

---

1. This provision was enacted as a response to the Supreme Court's 1982 decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon* held unconstitutional the broad grant of jurisdiction given to bankruptcy judges, to hear and determine all matters arising under or related to Title 11, under the Bankruptcy Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549.

Section 157 defines a complex relationship between a bankruptcy court and the district court that oversees its operation. In July, 1984, the Acting Chief Judge for the Southern District of New York implemented § 157(a) for this district, providing for automatic reference of bankruptcy related matters. *Bianco v. Hoehn (In re Gaston & Snow),* 173 B.R. 302, 304 (S.D.N.Y.1994).

only when resolution at trial presents material conflict between the provisions of Title 11 and non-bankruptcy federal law. *See Carter Day Indus., Inc. v. United States Environmental Protection Agency (In re Combustion Equipment Assoc., Inc.),* 67 B.R. 709, 711 (S.D.N.Y.1986). Keene alternatively argues that even under the "significant interpretation" standard announced in *Exxon,* no substantial issues of first impression exist requiring interpretation by the bankruptcy judge.

Keene's complaint does not allege any conflict between the provisions of Title 11 and non-bankruptcy federal law. Indeed, the parties themselves concede that the suit does not involve substantive Title 11 rights. Defendants, however, allege that the proceeding presents complicated issues of first impression under both the Antitrust Law and RICO and that it is improper for the bankruptcy court to interpret these non-bankruptcy federal statutes.

Mandatory withdrawal pursuant to the second sentence of § 157(d) is narrowly applied. *Hassett v. BancOhio National Bank (In re CIS Corp.),* 172 B.R. 748, 753 (S.D.N.Y.1994). Mandatory withdrawal is appropriate when "substantial and material" potential conflicts exist between non-bankruptcy federal laws and Title 11. *O'Connell v. Terranova (In re Adelphi Institute, Inc.),* 112 B.R. 534, 536 (S.D.N.Y.1990). Withdrawal is also warranted when resolution of the matter would require the bankruptcy judge to "engage in significant interpretation, as opposed to simple application," of federal non-bankruptcy statutes. *Exxon,* 932 F.2d at 1026.

■ The courts in this district have recognized that the mandatory withdrawal standard is more easily satisfied when complicated issues of first impression are implicated under non-bankruptcy federal laws. *International Assoc. of Machinists and Aerospace Workers, AFL–CIO v. Eastern Air Lines, Inc. (In re Ionosphere Clubs, Inc.)* (*"IAM I"*), 103 B.R. 416, 419 (S.D.N.Y.1989), *aff'd,* 923 F.2d 26 (1991); *American Telephone & Telegraph Co. v. Chateaugay Corp.,* 88 B.R. 581 (S.D.N.Y.1988). For this reason, Defendants contend that maintaining the reference

to the bankruptcy court is improper, and immediate withdrawal of the reference is required. However, mandatory withdrawal is a fact specific determination, and thus necessarily involves analysis in light of the circumstances involved in each case. *See, e.g., McCrory Corp. v. 99 cents Only Stores (In re McCrory Corp.),* 160 B.R. 502 (S.D.N.Y.1993) (finding mandatory withdrawal warranted, but to alternate district); *In re Adelphi Institute, Inc.,* 112 B.R. 534 (S.D.N.Y.1990) (holding that existence of RICO claim did not mandate withdrawal).

A proceeding is considered to be at the core of the bankruptcy "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by nature, could arise only in the context of a bankruptcy case." *In re McCrory Corp.,* 160 B.R. at 506 (citations omitted). Section 157(b)(2) does not clearly define a "core" proceeding, but "sets forth a non-exclusive list of matters falling under that category." *In re CIS Corp.,* 172 B.R. at 754. In core proceedings, the bankruptcy judge may enter "appropriate orders and judgments" which are subject to the "clearly erroneous" standard of review by the district court. 28 U.S.C. § 157(b)(1). However, the bankruptcy court's jurisdiction over non-core proceedings is more limited.

A bankruptcy judge has jurisdiction over non-core proceedings if the matter is "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). Although the non-core issues must relate to the issues under title 11, non-core proceedings involve disputes over rights that have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case. *J. Baranello & Sons, Inc. v. Baharestani (In re J. Baranello & Sons),* 149 B.R. 19, 24 (Bankr. E.D.N.Y.1992) (citing *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 162 (Bankr. E.D.N.Y.1986)). In these related non-core matters, which are left undefined by the statute, bankruptcy courts may issue findings of fact and conclusions of law, but are not empowered to issue final orders. These factual findings and legal conclusions are then submitted to the district court to be reviewed

*de novo.* See 28 U.S.C. § 157(c)(1); *International Assoc. of Machinists and Aerospace Workers, AFL–CIO v. Eastern Air Lines, Inc. (In re Ionosphere Clubs, Inc.)* ("*IAM II*"), 121 B.R. 428, 432 n. 5 (S.D.N.Y.1990). The district court is also authorized to conduct a *de novo* review of any portion of the bankruptcy judge's findings of fact and conclusions of law to which specific written objection has been made. Fed.R.Bankr.P. 9033(d).

■ Mandatory withdrawal is not warranted at this time because it is unclear whether issues requiring significant interpretation will be required for resolution.

## B. Discretionary Withdrawal

Section 157(d) states that "[t]he district court may withdraw ... any case or proceeding referred [to the bankruptcy court] under this section ... for cause shown." *Id.* To show cause, Defendants allege that their Seventh Amendment rights would be violated by a jury trial of a non-core proceeding in the bankruptcy court. Defendants also refer to the interests of judicial economy as favoring early intervention by this Court. Keene opposes withdrawal, arguing that the proceeding is "core", and thus properly within the jurisdiction of the bankruptcy court. *See* 28 U.S.C. § 157(b). Lastly, Keene contends that withdrawal is premature at this time.

■ Courts have considered a number of factors in deciding a motion for discretionary withdrawal. Among these factors are the core/non-core status of the claim, whether the action is at law or in equity, and judicial economy. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2nd Cir.1993). *See also Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992) (stating other factors which could be used in determining withdrawal motion). Although the focus of this determination is whether the proceeding is "core," it should

be noted that this status is a mere factor and "a finding that a matter is core or non-core does not automatically determine jurisdiction for the action." *In re Orion,* 4 F.3d at 1101.

Section 157(b)(3) classifies all proceedings as either core or non-core. Some courts have construed the language of § 157(b)(3) [2] as establishing a preference for the initial determination of the core/non-core issue to be made by the bankruptcy court. *See e.g. Chaplin v. Harbison Group (In re Friedberg )*, 87 B.R. 3 (S.D.N.Y.1988) (holding that bankruptcy court's determination of core/non-core status of proceeding is prerequisite to district court's decision to withdraw reference). However, nothing in this or any other statute vests this power exclusively in the bankruptcy court. *In re Orion,* 4 F.3d at 1101; *In re CIS Corp.,* 172 B.R. at 755. An initial determination by this Court is appropriate under the circumstances of this case. I see no reason to require the bankruptcy judge to make an initial determination based on facts which are presently before me. To rule otherwise would result in further delay occasioned by an added layer of judicial decision making.

■ Keene argues that this action is a "core" proceeding because it seeks redress for the events which caused Keene's Chapter 11 filing. However, neither the statutory scheme nor case law supports Keene's argument that an adversary proceeding by a debtor alleging conduct having a causal link to a Chapter 11 filing is necessarily within the province of the bankruptcy court's core jurisdiction.

Keene further asserts that the adversary proceeding is at the "heart of the administration" of the estate, and will have a monumental impact upon its estate. Thus, the proceeding should be deemed core. This contention is similarly unpersuasive. Although a literal reading of § 157(b)(3) seems to encompass all matters in which the Debtor is involved, courts have construed the section in

---

2. 28 U.S.C. § 157(b)(3) provides in pertinent part:

"The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceed-

ing under this subsection or is a proceeding that is otherwise related to a case under title 11."

*Id.*

light of the statute as a whole and have concluded that such a broad reading would be improper. *See Ben Cooper, Inc. v. The Insurance Co. of the State of Pennsylvania (In re Ben Cooper)*, 896 F.2d 1394, 1398 (2d Cir.1990). ("Matters that concern the administration of the bankrupt estate tangentially are related, non-core proceedings.") Moreover, in *In re Orion*, the Second Circuit expressly rejected such a sweeping interpretation, reasoning that it would render any pre-petition action for damages brought by the debtor as being at the "heart" of its administration due to the possibility of a sum of money being awarded to the estate. 4 F.3d at 1102.

■ Keene's complaint presents a pre-petition action for damages which is not brought against debtors of Keene, nor creditors of Keene, nor any claimants to Keene's estate. The complaint's sole connection to Title 11 is the fact that Keene filed for Chapter 11 protection. This tenuous link is not sufficient to treat the adversary proceeding as being at the "core" of the bankruptcy matter. To rule otherwise would contravene the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon* involved the adjudication in bankruptcy court of a state breach of contract claim as well as other state claims. 458 U.S. at 56, 102 S.Ct. at 2863–64. The Supreme Court held that the granting of jurisdiction under the Bankruptcy Reform Act to bankruptcy judges of all matters involving or related to Title 11 violated Article III of the United States Constitution. *Id.* at 87, 102 S.Ct. at 2880. In light of this holding and taking the statute as a whole, such a broad interpretation is unwarranted. In addition, all six claims asserted by Keene in the adversary proceeding have their genesis outside of the bankruptcy code, and the sole relation of the claims to Title 11 is the fact of Keene's

bankruptcy, this adversary proceeding must necessarily be treated as non-core.[3]

■ Moreover, despite Defendant's intention to file a jury demand, it is unclear whether Plaintiff's claims will reach the trial stage. The Second Circuit was presented with this issue in *In re Orion*, and has stated:

> [i]f a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However, a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

4 F.3d at 1101–1102.

I must consider the effect of Defendants' jury trial assertion on this motion. Defendants have expressed their intent to demand a jury trial and their entitlement to do so. However, Defendants have limited this demand to any district court trial and have explicitly withheld consent to a jury trial in the bankruptcy court.

The Seventh Amendment specifically preserves the jury trial right in actions historically decided at common law. U.S. Const. amend. VII. Keene's asserted claim and the relief sought are undoubtedly legal in nature, therefore entitling the parties to a jury if so demanded in the district court. However, this entitlement does not apply to trials held by non-Article III judges. The Second Circuit has definitively held that the U.S. Constitution prohibits such a jury trial to be conducted in the Bankruptcy Court. *See In re Orion*, 4 F.3d at 1101 (prohibiting jury trial in non-core matters because of incompatibility of *de novo* review provision and Seventh Amendment).[4]

---

**3.** Although the proceeding is non-core, it is clearly a matter which is "otherwise related" to the bankruptcy proceeding over which the bankruptcy court may exercise non-core jurisdiction.

**4.** Under the recently enacted Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106,

a bankruptcy judge may conduct a jury trial if specifically designated to do so by the district court and with the consent of all the parties. As Defendants have explicitly withheld consent to a bankruptcy court jury trial, the 1994 Act is inapplicable.

While it is clear that the bankruptcy court may not conduct a jury trial in this non-core proceeding, it does not necessarily follow that the reference must be withdrawn at this time. *See O'Connell v. Terranova (In re Adelphi Institute, Inc.),* 112 B.R. 534, 539 (S.D.N.Y.1990). In fact, "a rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme." *Kenai Corp. v. National Union Fire Insurance Co. (In re Kenai Corp.),* 136 B.R. 59, 61 (S.D.N.Y.1992). The bankruptcy judge may adjudicate pretrial matters not requiring the "final order or judgment" reserved to the district court under § 157(c)(1). *In re Adelphi Institute, Inc.,* 112 B.R. at 539; *In re CIS Corp.,* 172 B.R. at 763–764. Since this adversary proceeding is in its initial stages, the bankruptcy judge is fully equipped with the tools to proceed with this matter without interference by the district court. Therefore, the motion to withdraw the reference is not ripe at this time and will only become ripe if and when this matter proceeds to trial. *See In re Adelphi Institute,* 112 B.R. at 538.

Lastly, Defendants attempt to highlight the Bankruptcy Court's unfamiliarity with the adversary proceeding and its underlying facts as cause for ordering the withdrawal of the reference. Keene, on the other hand, characterizes the relationship of the bankruptcy court as "intimately familiar with the parties and their positions." However, Defendants do not dispute that the case is at a very early stage. Judicial economy is best served by allowing the bankruptcy court to handle the initial phases of this litigation. Accordingly, the motion to withdraw the reference of the matter to the bankruptcy court is denied.

## II. The Levy, Phillips & Konigsberg Appeal

█ In a separate motion, Defendant Levy, Phillips & Konigsberg ("LPK"), appeals from an interlocutory order which denied its motion to dismiss a contempt proceeding. *Acstar Insurance Co. v. Levy,* *Phillips & Konigsberg (In re Keene Corp.),* 168 B.R. 285 (Bankr.S.D.N.Y.1994) (the "May 1994 Order"). Keene moved for a Temporary Restraining Order ("TRO") and a Preliminary Injunction to prevent Defendants from gaining access to certain funds held in escrow for prevailing asbestos claimants. Keene sought an order of civil contempt due to the fact that LPK violated the TRO which was signed by the bankruptcy judge. The motion for a preliminary injunction was later denied and the TRO was vacated. *Keene Corp. v. Acstar Insurance Co. (In re Keene Corp.),* 162 B.R. 935 (Bankr.S.D.N.Y.1994) (the "January Order"). LPK argues that since the TRO was vacated, the court is mandated to dismiss the contempt proceeding. LPK supports its position by citing to cases involving the vacating of an order which was erroneously issued. However, there is nothing in the January Order that indicates that the TRO was erroneously issued. Rather, the bankruptcy court determined that Keene did not satisfy the burden necessary to support the issuance of a preliminary injunction. The TRO had served its purpose, and was vacated in accordance with the court's denial of the preliminary injunction.

The bankruptcy court termed Defendant's argument for dismissing the contempt proceeding as "novel," yet was not persuaded, and ruled against LPK. In so doing, the bankruptcy court held that the vacatur of the TRO upon the denial of the preliminary injunction motion in no way mandates the dismissal of the compensatory contempt proceeding for the violation of that order. Rather, the court reminded LPK that "[o]ne who disobeys a valid court order subjects himself to both civil and criminal contempt penalties for the same act." May 1994 Order, 168 B.R. at 288 (citing *New York State National Organization for Women v. Terry,* 697 F.Supp. 1324, 1329 (S.D.N.Y.1988)). The termination of the underlying order does not automatically obviate the need for a contempt hearing on damages. The bankruptcy judge's opinion clearly spells out the law on this issue and properly resolves the issue. Accordingly, the appeal is without merit and must be dismissed.

For the foregoing reasons, Defendants' motion to withdraw the reference is denied, and LPK's appeal from the bankruptcy judge's order is dismissed.

SO ORDERED.