UNITED STATES of America ex rel. Jeffrey P. GOLDSTEIN,

v.

**P & M DRAPERIES, INC.**

No. CIV. JFM–00–3726.

United States District Court, D. Maryland.

Jan. 6, 2004.

Victor A. Kubli, Grayson Kubli and Hoffman PC, McLean, VA, for Plaintiff.

Linda K. Brown, Law Office, Laurel, MD, William Collins Brennan, Jr., John Michael McKenna, Brennan Trainor Bill-

man and Bennett LLP, Upper Marlboro, MD, for Defendant.

Jennifer Lilore Huesman, Office of the United States Attorney, Baltimore, MD, Lynne A. Battaglia, Court of Appeals of Maryland, Annapolis, MD, for Movant.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff relator Jeffrey Goldstein has filed a motion seeking withdrawal of an order I entered on November 12, 2003, staying this action in response to a suggestion of bankruptcy filed by defendant. Plaintiff contends that the bankruptcy stay is inapplicable to *qui tam* actions, such as this, brought under the False Claims Act. For the reasons stated below, plaintiff's motion will be denied.

### I.

Plaintiff is the former president and owner of Commercial Drapery Contractors, Inc. He was indicted and convicted of defrauding the government in connection with sales of draperies and related accessories to the United States government. In late 2000 and early 2001, plaintiff filed several actions against his former competitors in the drapery industry (including the instant action in December 2000), alleging that his competitors had made false representations to the General Services Administration in the course of their negotiation of multiple award schedule contracts. The actions were filed pursuant to the *qui tam* provision of the False Claims Act, 31 U.S.C. § 3720(b).

On February 1, 2002, the United States filed notice of its election to decline inter-vention in this action.[1] While cross motions for summary judgment were pending, and after counsel for defendant had withdrawn their appearance, defendant filed a suggestion of bankruptcy.

### II.

In general, upon the filing of a petition in bankruptcy, voluntary or involuntary, section 362(a) of the Bankruptcy Code provides for an automatic stay of the commencement or continuation of judicial proceedings against the debtor. 11 U.S.C. § 362(a). One of the "chief purpose[s]" of that provision is "to allow for a systematic, equitable liquidation proceeding by avoiding a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Safety–Kleen, Inc. v. Wyche,* 274 F.3d 846, 864 (4th Cir.2001) (citing *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir. 1976)). The automatic stay protects both the debtor, who enjoys a "breathing spell," and the creditors, who are saved from an "unfair race to the courthouse." *United States v. Nicolet, Inc.,* 857 F.2d 202, 207 (3d Cir.1988).

There are, however, several exceptions to the automatic stay rule. One exception is created by 11 U.S.C. § 362(b)(4). That section provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of *an action or proceeding by a governmental unit . . .* to enforce such governmental unit's police or regulatory power." (*Emphasis added.*)

The legislative history of section 362(b)(4) indicates that Congress enacted

---

1. The United States also declined to intervene in the other actions filed by plaintiff. I dismissed those actions for failure to plead fraud with sufficient particularity. *United States ex rel. Jeffrey P. Goldstein v. Leonard's Draperies, Inc.,* 238 F.Supp.2d 711 (D.Md.2002), *United States ex rel. Jeffrey P. Goldstein v. Fabricare Draperies, Inc.,* 236 F.Supp.2d 506 (D.Md. 2002). The cases are presently on appeal.

this exception in response to concern regarding the "overuse of the stay in the area of governmental regulation." *See In re Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Department of Health of the Commonwealth of Puerto Rico,* 60 B.R. 920, 932 (D.P.R.1986). As examples of the sorts of actions the provision was intended to except from the automatic stay, the legislative history cites cases where stays had prevented one state from closing down a debtor's plant that was actively polluting a river within the state, and had prevented another state from obtaining an injunction against a principal in a corporation acting in violation of the state's consumer protection laws. *Id.* This legislative history reflects what courts have recognized as the purpose of this exception: to prevent debtors from "frustrating necessary governmental functions by seeking refuge in bankruptcy court." *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1024 (2d Cir.1991).

## III.

In determining the applicability of the exception provided in § 362(b)(4) to this case, two questions must be answered. First, is a suit under the False Claims Act an action to enforce a governmental unit's police or regulatory power? Second, does a *qui tam* action under the False Claims Act in which the government has decline to intervene qualify as "an action or a proceeding brought by a governmental unit?" The answer to the first of these questions is clear: it is well settled that an action under the False Claims Act qualifies as an action to enforce the government's "police or regulatory power." *In re Commonwealth Companies, Inc.,* 913 F.2d 518, 527 (8th Cir.1990). The second question is more challenging.

"Statutory interpretation necessarily begins with an analysis of the language of the statute... If the language is plain, and 'the statutory scheme is coherent and consistent,' [a court] need not inquire further." *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 603 (4th Cir.1999). Only where there is a "clearly expressed legislative intent to the contrary," does it become necessary to venture beyond the plain meaning of the statute. *Id.* Therefore, I begin with the definition of "governmental unit" provided in 11 U.S.C. § 101(27):

> " '[G]overnmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state, department, agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government ..."

This definition is limited to actual government entities and makes no mention of *qui tam* plaintiffs. Rather than contradicting this limitation, the legislative history confirms it. A portion of the House Report expressly stated that "[e]ntities that operate through state action such as through the grant of a charter or license, and have no further connection with the state or federal government are not within the contemplation of the definition." H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 24 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5810, 6268, cited in *In re Revere Copper and Brass, Inc.,* 32 B.R. 725, 727 (S.D.N.Y.1983).

If a *qui tam* plaintiff is not himself a "governmental unit," then the exception applies only if a *qui tam* action may nevertheless be considered an action "by a governmental unit." Again, the starting point must be the relevant statutory language. Section 3730(b) of the False Claims Act,

which creates *qui tam* actions, provides that such an action "shall be brought in the name of the Government," and under section 3730(d) the government is entitled to the bulk of any recovery that is achieved. 31 U.S.C. § 3730. However, section 3730(b) is entitled "Actions **by** Private Persons" (*emphasis added*), and the first sentence of the section states that "a person may bring a civil action for a violation of section 3729 for the person and for the United States Government." Therefore, although a *qui tam* action can certainly be said to be an action "on behalf" of a "governmental unit" or "for" a "governmental unit," it is not an action "by a governmental unit." [2]

Section 3720(b)(2) goes on to authorize the government to intervene in a *qui tam* action and "proceed" with it. Once the government has intervened, the action is subsequently "conducted by the government." 31 U.S.C. § 3720(b)(4)(A). Accordingly, in cases where the government has intervened and the defendant has thereafter filed for bankruptcy, courts have quite properly held that the exception to the automatic stay created by 11 U.S.C. § 362(b)(4) does apply. In that instance the action is continued "by a governmental unit," and excepting the action from the automatic stay serves the statutory purpose of preventing the frustration of "necessary government functions." *See, e.g.*,

United States of America ex rel. Kenneth L. Marcus v. NBI, Inc., 142 B.R. 1 (D.D.C. 1992).

In contrast, where (as in this case) the government has declined to intervene, the *qui tam* plaintiff alone has the "right to conduct the action." 31 U.S.C. § 3730(b)(4)(B). When the government plays no role in pursuing an action, it can hardly be said that the action was commenced or continued "by" the government. Furthermore, to hold that the exception does not apply to a *qui tam* action in which the government has declined to intervene does not violate a "clearly expressed legislative intent to the contrary." *Holland*, 181 F.3d at 603. Where the government has made a determination that the government interests implicated in an action are not sufficiently significant to merit intervention, any concern that application of the stay would "frustrate necessary government functions" is greatly diminished. *Compare City of New York*, 932 F.2d at 1024. This is particularly true in light of the fact that if the government concluded that the bankruptcy stay had a substantial adverse impact upon its interests and functions, it could file a motion under 31 U.S.C. § 3730(c)(3) exercising its right to intervene beyond the sixty day mark upon a showing of good cause. Were such a motion filed and granted, the government

---

**2.** The Supreme Court has recognized a difference between the government and *qui tam* relators. "As a class of plaintiffs," the Court has noted, "qui tam relators are different in kind than the Government," and they are driven by different motivating forces. *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949, 117 S.Ct. 1871, 1877, 138 L.Ed.2d 135 (1997). The *qui tam* relator is "motivated primarily by prospects of monetary reward," while the government is motivated primarily by "the public good." *Id.* As a result, *qui tam* relators are "less likely than is the government to forgo an action arguably based on a mere technical compliance with

reporting requirements that involved no harm to the public fisc." *Id.*

Arguably, this difference is relevant to the issue presented in this case. It is one thing to hold that the government has the right to proceed with litigation outside of bankruptcy proceedings where it seeking to vindicate its own interests necessary to the performance of its functions. It would be quite another thing to hold that a *qui tam* plaintiff (particularly one whose own hands, like Goldstein's, are unclean) should have this right and be given priority over other creditors when he is "motivated primarily by prospects of monetary award."

would be continuing the litigation, and the section 362(b)(4) exception would become applicable.

## IV.

In support of his contention that section 362(b)(4) should apply, plaintiff cites *United States of America ex rel. Jane Doe v. X Inc.*, 246 B.R. 817 (E.D.Va.2000). There, borrowing from cases decided in the Eleventh Amendment context, the court adopted a "pecuniary interest test" in determining the applicability of section 362(b)(4). I have followed a different and contradictory line of reasoning. However, my holding is not in conflict with the holding of *Jane Doe* because in that case the government had not yet determined whether or not to intervene in the *qui tam* action.

Finally, I note that the conclusion I have reached is consistent with the decisions of several courts that the "governmental unit" exception does not extend to various actions brought by private individuals or organizations to enforce governmental regulations. *See In re Revere Copper*, 32 B.R. at 727 (private corporation's action under citizen suit provision of Clean Water Act did not qualify for § 362(b)(4) exception, which "applies exclusively to actual government groups"), *United States v. Environmental Waste Control, Inc.*, 131 B.R. 410, 422 (N.D.Ind.1991)(private citizens group's action to enforce governmental regulation not subject to the stay exception under § 362(b)(4), "which is confined to governmental authorities seeking to enforce regulations violated by debtor or its agents").

A separate order denying plaintiff's motion is being entered herewith.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 6th day of January 2004

ORDERED that plaintiff's Motion for Order Acknowledging Inapplicability of Bankruptcy Stay is denied.